ANGELO R. GIUDICE
2700 Lighthouse Point
Unit 724
Baltimore, Maryland 21212

JAMES P. JOYCE
2700 Lighthouse Point
Unit 724
Baltimore, Maryland 21212

DOUGLAS F. ESHELMAN
2700 Lighthouse Point
Unit 724
Baltimore, Maryland 21212

GRANTLEIGH STATION, LLC
2700 Light House Point, Unit 724
Baltimore, Maryland 21212

        Plaintiffs,

v.

BRADFORD BANK
6910 York Road
Baltimore, Maryland 21212

    Serve on:

    J. Daniel Sadler, Vice President
    6910 York Road
    Baltimore, Maryland 21212

    Dallas R. Arthur, President
    6910 York Road
    Baltimore, Maryland 21202

    Maryland SDAT
    301 W. Preston Street
    Baltimore, Maryland 21201

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

IN THE

CIRCUIT COURT

FOR          CIVIL DIVISION

BALTIMORE CITY

Case No.

RECEIVED
CIRCUIT COURT FOR
BALTIMORE CITY
'09 JUL 31  PM 2: 22

## COMPLAINT AND DEMAND FOR JURY TRIAL

281164v5

Plaintiffs, Angelo R. Giudice, James P. Joyce, Douglas F. Eshelman and Grantleigh Station, LLC (collectively "**Plaintiffs**"), through their undersigned counsel, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., hereby sue Defendant Bradford Bank for tortious interference with a business relationship and promissory estoppel/detrimental reliance.

## JURISDICTION AND VENUE

1.    This Court has personal jurisdiction over Defendants under § 6-102(a), and § 6-103(b) of the Courts & Judicial Proceedings Article of the Annotated Code of Maryland.

2.    This Court is the appropriate venue for this proceeding pursuant to § 6-201(a) of the Courts & Judicial Proceedings Article of the Annotated Code of Maryland.

## THE PARTIES

3.    Plaintiff, Angelo R. Giudice ("**Giudice**") is an individual doing business in Baltimore City, Maryland.

4.    Plaintiff, James P. Joyce ("**Joyce**") is an individual doing business in Baltimore City, Maryland.

5.    Plaintiff, Douglas R. Eshelman ("**Eshelman**") is an individual doing business in Baltimore City, Maryland.

6.    Plaintiff, Grantleigh Station, LLC is a Maryland Limited Liability Company formed in 2005 to acquire, own construct, develop, and hold real property.

7.    Defendant, Bradford Bank (the "**Bank**") is a federally chartered bank that carries on a regular business in Baltimore City, Maryland.

## FACTS

8.      On or about July 10, 2006, Plaintiffs and the Bank entered into an agreement whereby the Bank agreed to provide short-term land acquisition and pre-development financing to Plaintiffs for a land development project known as Grantleigh Station (the "**Loan**").

9.      The principal amount of the Loan was Two Million Five Hundred Seventy-Eight Thousand Eight Hundred Forty Dollars ($2,578,840.00). The parties subsequently increased the principal amount of the Loan to Three Million One Hundred Sixty-Four Thousand Six Hundred Eighteen Dollars ($3,164,618.00).

10.     Grantleigh Station is a 42 acre parcel of land in Middle River, Baltimore County, Maryland (the "**Grantleigh Station Property**").

11.     The purpose of the Loan was to provide short-term financing to Plaintiffs to enable them to acquire the land and perform pre-development on fifty-eight (58) preliminarily approved residential lots (the "**Lots**") and re-sell the Lots within approximately two years.

12.     All parties understood that following the acquisition and pre-development, Plaintiffs would seek builders to buy the Lots

13.     Despite the understanding of all parties that the Loan was to Grantleigh Station, LLC, the legal documents prepared by the Bank's attorneys inaccurately list Giudice, Joyce, and Eshelman as the borrowers in their individual capacities.

14.     Plaintiffs did not have an attorney review the documents prepared by the Bank prior to executing them, but instead, relied on the Bank to accurately memorialize the parties' agreement.

3

15.     Plaintiffs were unaware that the documents memorializing the Loan inaccurately state that Giudice, Joyce, and Eshelman borrowed the funds in their individual capacity until they retained counsel following the Bank's improper demands for repayment of the Loan.

16.     Under the terms of the Loan, Plaintiffs were required to make monthly interest payments, with the principal amount due in full upon expiration of the term of the Loan on July 1, 2007.

17.     On June 6, 2007 the Bank exercised an option to extend the Loan for an additional six months thereby modifying the maturity date to January 1, 2008.

18.     On December 28, 2007, the Bank again exercised the extension option and modified the maturity date to July 1, 2008.

19.     Plaintiffs made all of the required interest payments under the Loan.

20.     Pursuant to the Loan, interest was to be paid from an interest reserve, as is generally the case with acquisition and pre-development loans.  In July, 2008, the Bank notified the Plaintiffs that it would no longer allow interest to be paid from the reserve.

21.     Since that time, Giudice, Joyce and Eshelman have paid all interest due on the Loan, the real estate taxes of $50,000 and the insurance premiums of about $5,000.

22.     Following the unprecedented and unforeseen collapse of the national and world economy, in 2008, it became clear to all parties involved that it would be impossible for Plaintiffs to sell the Lots and/or obtain refinancing of the Loan.

23.     In the economy today, it is virtually impossible to obtain financing for residential building lots.

4

24.    Accordingly, prior, and subsequent, to the amended loan maturity date of July 1, 2008, the Bank met with Plaintiffs on numerous occasions to discuss a potential work out.

25.    During the course of these discussions, the Bank continuously promised Plaintiffs that it would agree to further extensions and would not call the Loan.

26.    Specifically, in meetings in the fall of 2008 and the first half of 2009, Kathy Ashby, J. Daniel Sadler, and Gerry Muccioli, on behalf of the Bank, assured Plaintiffs that the Bank understood the current financial environment and promised not to call the Loan so long as Plaintiffs continued to make interest payments.

27.    Accordingly, Plaintiffs continued to make, and the Bank continued to accept, monthly interest payments.

28.    In April 2009, during workout discussions with the Bank, Kathy Ashby represented that 30% discounts are typically offered in connection with workouts and she indicated that she would consider such an offer. Subsequently, Plaintiffs made an offer with a substantial discount, having been led to believe that such an offer would be acceptable to the Bank.

29.    In connection with the work out discussions, and in anticipation of further extensions, the Bank ordered, and Plaintiffs paid for, appraisals of the property.

30.    Specifically, an appraisal conducted in March 2009 concluded that the value of the Grantleigh Station Property was Two Million Five Hundred Fifty-Five Thousand Dollars ($2,555,000.00).

31.    In connection with the attempted work outs, Plaintiffs expended resources and contacted many potential lenders and private equity investors, including Messrs. Scott Plank ("**Plank**") and Lawrence Macks ("**Macks**").

32.    Plaintiffs kept the Bank fully informed about the progress of their discussions with various potential investors, including Plank and Macks.

33.    Plaintiffs and Macks worked out a tentative agreement for a joint venture in which Macks would provide needed equity in exchange for a majority equity interest in Grantleigh Station.

34.    Under the proposed agreement, Plaintiffs would retain a One Million Dollar equity interest in Grantleigh Station.

35.    On or about June or July 2009, with full knowledge that Plaintiffs were negotiating with Macks, the Bank, without the knowledge or consent of Plaintiffs, agreed to meet with Macks.

36.    During this meeting, the Bank unlawfully provided Macks with confidential financial records relating to the Loan and Plaintiffs.

37.    As a result of this meeting in which the Bank disclosed confidential information, Macks declined the proposed joint venture and discontinued negotiations with Plaintiffs. Also, after this meeting with Macks, the Bank rejected the discounted offer previously made by Plaintiffs despite its previous representations that it would entertain such an offer.

38.    On or about, June 15, 2009, contrary to the previous statements of the Bank, the law firm of Coady & Farley, sent a demand letter to Plaintiffs asserting that the Loan was in default.

39.     The letter demanded payment on or before June 30, 2009 of the principal and accrued interest on the Loan in the amount of Three Million One Hundred Ninety-Five Thousand Three Hundred Eighty-Six Dollars and Three Cents ($3,195,386.03).

40.     On or about July 2, 2009, again in direct contradiction to its previous promises, the Bank filed an action against Plaintiffs in the Circuit Court for Baltimore County seeking a confession of judgment for the principal and interest of the Loan.

41.     To date, Plaintiffs have not been served with process in the confessed judgment action.

### COUNT I
(Tortious Interference with a Business Relationship)

42.     Plaintiffs reallege and incorporate by reference each of the allegations set forth in Paragraphs No. 1 through 41 above.

43.     On or about June or July 2009, the Bank willfully and intentionally met with Macks and provided him with confidential financial information relating to Plaintiffs and the Loan.

44.     The Bank's disclosure of confidential financial information was calculated to cause damage to Plaintiffs' lawful business by cutting Plaintiffs out of the proposed transaction and selling the Loan directly to Macks.

45.     The Bank's disclosure of confidential financial information was done with actual malice and unlawful purpose to cause damages to Plaintiffs without right and justifiable cause on the part of the Bank.

46.     The Bank's interference with Plaintiffs' business relationship with Macks was done through improper means because the disclosure was made in violation of

7

Federal and Maryland law relating to the confidentiality of financial information. *See* Md. Code, Financial Institutions § 1-302.

47.    Plaintiffs suffered actual damages and loss as a direct result of the Bank's disclosure because based on the confidential information Macks obtained from the Bank, he quashed the proposed joint venture and cut off negotiations with Plaintiffs.

48.    Plaintiffs, thus, lost at least One Million Dollars ($1,000,000) in equity and the future upside of its investment in Grantleigh Station as result of the Bank's wrongful conduct.

WHEREFORE, Plaintiffs demand judgment against the Bank for compensatory damages in an amount in excess of Five Million Dollars ($5,000,000.00), with the exact amount to be determined at trial, punitive damages in the amount of Five Million Dollars ($5,000,000.00), and such other and further relief as this cause and justice may require.

## COUNT II
### (Promissory Estoppel/Detrimental Reliance)

49.    Plaintiffs reallege and incorporate by reference each of the allegations set forth in Paragraphs No. 1 through 48 above.

50.    The Bank made clear and definite promises to Plaintiffs that it would not demand payment on the Loan so long as Plaintiffs continued to make timely interest payments.

51.    Plaintiffs made all required interest payments, real estate tax payments and insurance payments in a timely fashion.

52.    The Bank reasonably expected that its promises would induce Plaintiffs to expend time and money in connection with continued buy out discussions.

8

53.    Plaintiffs actually and reasonably relied on the Bank's promises that it would not demand payment on the Loan by paying for appraisals of the property, all interest, the real estate taxes and the insurance premiums and expending time and money seeking investors for a joint venture.

54.    Plaintiffs' detriment can only be avoided by enforcement of the Bank's promise not to demand payment on the Loan which will allow time for the economy to turn around and for Plaintiffs to locate investors.

WHEREFORE, Plaintiffs demand judgment against the Bank for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), with the exact amount to be determined at trial, and such other and further relief as this cause and justice may require.

## PRAYER FOR JURY TRIAL

Plaintiffs hereby pray a jury trial as to all issues triable to a jury.

Respectfully submitted,

THOMAS M. WOOD IV
BRIAN M. BOYLE
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street
27th Floor
Baltimore, MD 21202
410-332-8523

Attorneys for Plaintiffs

9